UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANKLIN R. ELLIS, | ) | CASE NO. EDCV 04-00183-MAN |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Plaintiff filed a complaint on February 20, 2004, seeking review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  42 U.S.C. § 1388(c)(3); 42 U.S.C. § 405(g).  On March 18, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 16, 2004, in which: Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits; and Defendant requests that the Commissioner's decision be affirmed.  The Court has taken the parties' briefing under submission without oral argument.

**BACKGROUND**

**A.    Administrative Proceedings**

Plaintiff filed applications for DIB on June 12, 1989, and for SSI on March 5, 1990.  (Administrative Record ("A.R.") 55-58, 83-86.) Plaintiff claims that he has been disabled since October 25, 1988, due to back pain following an injury to his lower back and surgery, as well as hypertension and headaches.  (A.R. 55, 83, 96, 104.)  He has past relevant work experience as an asphalt laborer, construction worker, and truck driver.  (A.R. 599.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On August 22, 1990, Plaintiff, who was represented by a lay representative, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Dennis Bennett.[1]  In a January 24, 1991 written decision, the ALJ found that Plaintiff was not disabled.  (A.R. 196-202.)  In an October 2, 1991 order, the Appeals Council remanded the case to the ALJ, who was instructed to "[e]valuate [Plaintiff's] subjective complaints in accordance with the criteria described in Social Security Ruling 88-13" and ensure that the conclusion regarding Plaintiff's subjective complaints is "consistent with the ultimate conclusion on the issue of disability," after providing Plaintiff with the opportunity for an additional hearing.  (A.R. 212-13.)  A supplemental hearing was conducted in January 1992, at which Plaintiff and his lay

---

[1]    This hearing transcript is not contained in the record.

2

representative appeared.[2]  (*See* A.R. 234.)

On April 23, 1992, ALJ Bennett again found that Plaintiff was not disabled.  (A.R. 234-42.)  On October 16, 1992, the Appeals Council remanded the case on the ground that:

> Plaintiff's treating physician, Dr. Abatecola, reports in Exhibit 34 that [Plaintiff] should be considered totally disabled due to his lumbar disc disease.  While such an opinion is not determinative of the issue of disability, 20 CFR 1527 provides that when a treating source's opinion is not given controlling weight, the decision will contain the reasons for the weight given that opinion.  The decision does not contain such an explanation.

(A.R. 253.)  The Appeals Council directed that the case be assigned to a different ALJ and that Plaintiff be afforded the opportunity for a supplemental hearing.  (A.R. 253-54.)

On September 9, 1993, Plaintiff, who was represented by a lay representative, appeared and testified at a hearing before ALJ F. T. Bonne.  (A.R. 31-54.)  In a November 23, 1993 written decision, ALJ F. Keith Varni found that Plaintiff was not disabled.  (A.R. 422-28.)  On November 16, 1994, the Appeals Council again remanded the case, because the hearing tape had been certified as "lost," and therefore, the record

---

[2]   This hearing transcript is not contained in the record.

3

1  was incomplete.  (A.R. 343-44.)  The ALJ was directed to "hold a *de novo*
2  hearing and again obtain evidence from a vocational expert to clarify the
3  effect of the assessed limitations on [Plaintiff's] occupational base."
4  (*Id.*)

5

6      On March 16, 1995, ALJ Varni noted that "the issue of a mental
7  impairment, namely substance addiction, has been raised for the first time
8  at the hearing level"; he remanded the case to the state agency to
9  investigate both this issue and a discrepancy between Plaintiff's prior
10  testimony that he had not worked since 1988, and a recently-submitted
11  medical report stating that Plaintiff sustained an industrial injury on
12  February 24, 1993.  (A.R. 433-34.)  Subsequently, in an April 5, 1996
13  written decision, ALJ Varni found that Plaintiff was not disabled.  (A.R.
14  19-24.)  The Appeals Council affirmed the decision (A.R. 6-8), and
15  Plaintiff sought review in this Court, in Case No. EDCV 97-00171-MAN (A.R.
16  610).

17

18      On September 6, 2000, this Court remanded the case for further
19  proceedings before the ALJ, because "the ALJ did not take the action
20  ordered by the Appeal Council's November 11, 1994 decision."  (A.R. 613.)
21  Specifically, the Court directed the ALJ to conduct a *de novo* hearing and
22  obtain evidence from a vocational expert to clarify the effect of
23  Plaintiff's limitations on his occupational base, in accordance with the
24  direction of the Appeals Council in its November 11, 1994 decision.  (A.R.
25  614, 617.)

26

27      On May 16, 2002, Plaintiff, who was represented by the same lay
28

4

representative,[3] appeared and testified at a hearing before ALJ Jacqueline S. Drucker.  (A.R. 618-57.)  In a June 20, 2002 written decision, ALJ Drucker found that Plaintiff was not disabled during the period from October 25, 1988, to September 17, 1995.  (A.R. 588-06.)  However, she concluded that, as of September 18, 1995, his fiftieth birthday, Plaintiff became "disabled" pursuant to the Medical Vocational Guidelines (the "Grids") and, thus, was entitled to SSI.  (A.R. 604, 606.)  On June 20, 2002, the Appeals Council declined review of ALJ Drucker's decision. (A.R. 580-82.)

**B.    The ALJ's Decision**

        In her June 20, 2002 written decision, the ALJ[4] found that Plaintiff had not engaged in substantial gainful activity since October 25, 1988, and met the disability insured status requirements of the Social Security Act through June 30, 1991.  (A.R. 604.)  The ALJ concluded that Plaintiff has "severe" impairments of degenerative disk disease of the lumbar spine with laminectomy and recurrent disk protrusions at the L4-5 and L5-S1 levels, status post myocardial infarction, and degenerative joint disease of the right knee, but that such impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (A.R. 604-05.)

---

        [3]    The representative - Frederick Leland - is incorrectly described as an attorney in the hearing transcript and subsequent ALJ decision; however, he was not an attorney.  (*See, e.g.,* A.R. 668.)

        [4]    Hereafter, all references to "the ALJ" mean ALJ Drucker and her June 20, 2002 decision.

The ALJ found that Plaintiff has the following residual functional capacity:  "[Plaintiff can] sit for 6 hours of an 8-hour work day," "can stand and walk for 2 hours each of an 8-hour work day," "can lift and carry up to 10 pounds on an occasional basis," and "requires a sit stand option."[5]  (A.R. 605.)  The ALJ determined that Plaintiff's "subjective complaints are found to be generally credible, but not indicative of a more restrictive residual functional capacity than described above." (*Id.*)  The ALJ found that Plaintiff has a tenth grade education, and was a "younger individual" for the period from October 25, 1988, to September 17, 1995, and became an individual who was "closely approaching advanced age" on September 18, 1995, Plaintiff's fiftieth birthday. (*Id.*)  The ALJ further found that Plaintiff's past relevant work was semiskilled, but he does not have transferable skills and cannot perform his past relevant work.  (*Id.*)

Using Rules 201.19 and 201.25 of the Grids as a framework, the ALJ found that Plaintiff was "not disabled" during the period from October 25, 1988, to September 17, 1995, and could perform other jobs in the national economy, such as production assembler and nut sorter.[6]  (A.R. 605-06.)

---

[5]     "Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567, 416.967.

[6]     Under Rules 201.19 and 201.25, a claimant who is a "younger individual," with a "limited or less" education, with "skilled or semi-skilled" past relevant work, and with skills that are not "transferable," is "not disabled."  20 C.F.R. Pt. 404, Subpart P., App. 2; 20 C.F.R., Pt. 220, Subpart P, App. 2.

1   However, on September 18, 1995, Plaintiff's fiftieth birthday, he became

2   "disabled" by operation of Rule 201.10.[7] (A.R. 606.) Accordingly, the ALJ

3   determined that Plaintiff: was not "disabled" within the meaning of the

4   Social Security Act, and was not entitled to receive DIB or SSI for the

5   period from October 25, 1988, to September 17, 1995; but was disabled, and

6   entitled to receive SSI, from September 18, 1995, and continuing through

7   the date of the decision. (*Id.*)

8

9                              **STANDARD OF REVIEW**

10

11      This Court reviews the Commissioner's decision to determine whether

12  it is free from legal error and supported by substantial evidence. <u>Smolen</u>

13  <u>v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's

14  decision must stand if it is supported by substantial evidence and applies

15  the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th

16  Cir. 1996). Substantial evidence is "more than a mere scintilla but less

17  than a preponderance -- it is such relevant evidence that a reasonable

18  mind might accept as adequate to support the conclusion." <u>Moncada v.</u>

19  <u>Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

20

21      Although this Court cannot substitute its discretion for that of the

22  Commissioner, this Court nonetheless must review the record as a whole,

23  "weighing both the evidence that supports and the evidence that detracts

24

---

25          [7]     Under Rule 201.10, a claimant who is "closely approaching
26  advanced age," with a "limited or less" education, with "skilled or
    semi-skilled" past relevant work, and with skills that are not
27  "transferable," is "disabled." 20 C.F.R. Pt. 404, Subpart P., App. 2;
    20 C.F.R., Pt. 220, Subpart P, App. 2.

28

                                     7

1  from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health</u>
2  <u>and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v.</u>
3  <u>Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for
4  determining credibility, resolving conflicts in medical testimony, and for
5  resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th
6  Cir. 1995).  This Court must uphold the Commissioner's decision if it is
7  supported by substantial evidence and free from legal error, even when the
8  record reasonably supports more than one rational interpretation of the
9  evidence.  *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social</u>
10 <u>Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v.</u>
11 <u>Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

12

13                                **DISCUSSION**

14

15      Plaintiff raises three issues in this action.  (Joint Stip. at 3.)
16 Plaintiff first contends that the ALJ failed to properly evaluate his
17 subjective complaints.  Plaintiff next contends that the ALJ did not
18 properly consider a portion of the testimony of Dr. Sami Nafoosi, the
19 medical expert who testified at the May 16, 2002 hearing.  Plaintiff
20 labels his final issue as a claim that the ALJ failed to include all of
21 Plaintiff's impairments in her hypothetical question to the vocational
22 expert.  However, a review of Plaintiff's argument in support of this
23 issue reveals that he principally complains that the ALJ's conclusion that
24 Plaintiff could work was not based on substantial evidence, because the
25 medical evidence showed that Plaintiff had herniated discs as of October
26 1988, for which he had surgery in October 1989, and thereafter had another
27 possibly herniated disc, and his physician submitted a letter dated

28
                                     8

November 14, 1991, in which the physician opined that Plaintiff was "totally disabled." (Joint Stip. at 9-10, 14.)  Accordingly, the Court will address this aspect of the third issue in connection with its analysis of the second issue.

**A.    <u>The ALJ Adequately Considered The Testimony Of The Medical Expert Regarding Plaintiff's Limitations, As Well As The Medical Evidence Of Record</u>.**

Through his second issue, Plaintiff complains that the ALJ failed to consider Dr. Nafoosi's testimony at the hearing that the evidence of radiculopathy of the left lower extremity "is significant for muscle weakness, question of muscle atrophy, and symmetrical reflex changes," which has "resulted in a marked limitation in his ability to perform substantial, gainful activity." (Joint Stip. at 7-8, relying on A.R. 642-43.)  Plaintiff contends that Dr. Nafoosi did not affirmatively opine whether or not "[P]laintiff is able to maintain substantial gainful activity," but his above testimony as to a marked limitation means that Plaintiff cannot work, and the ALJ erred by not so finding based on that testimony.  (Joint Stip. at 8.)

Through his third issue, Plaintiff complains that the ALJ failed to adequately consider the medical evidence regarding his herniated discs and their effect on his ability to work, as well as the November 14, 1991 letter of his treating physician, Dr. Philip Abatecola.  Plaintiff reasons that the ALJ's opinion, therefore, does not rest on substantial evidence. (Joint Stip. at 10-11, 14.)

1    In order for the ALJ to find that Plaintiff was disabled during the

2  period at issue here for DIB benefits,[8] Plaintiff must show that he became

3  disabled prior to June 30, 1991, his last insured date.  *See* 42 U.S.C. §§

4  401, 423(d)(3) and (5); 20 C.F.R. §§ 404.1512, 404.1513; Macri v. Chater,

5  93 F.3d 540, 543 (9th Cir. 1996)(a social security claimant has the burden

6  of proving that he became disabled prior to the expiration of his

7  disability insured status).  Because Plaintiff is claiming that his

8  disability began on October 25, 1988, he must provide evidence showing

9  that his disability persisted during the claimed period of disability from

10 October 25, 1988, through September 17, 1995.  Flaten, 44 F.3d at 1462 (a

11 claimant cannot be found disabled unless he can adduce acceptable medical

12 evidence that pertains to the period during which he was insured).

13

14   At the May 16, 2002 hearing, the ALJ questioned Dr. Nafoosi about

15 Plaintiff's impairments and the extent to which he was functionally

16 limited between October 1988, and June 30, 1991.  Dr. Nafoosi responded:

17

18      [Plaintiff] suffered a work-related injury in 1988, which

19      resulted in low back pain which was felt [to be] due to a

20      herniated disc which required lumbar laminectomy in November of

21      1989.  Exhibit 24, Page 1.  He also suffered from hypertension

22      with evidence of cardiomegaly by an X ray performed October

23      1989.  Exhibit 24, Page 10.  At that time these were his

24      medically-determinable conditions.  Now the back pain -- the

25      back examination is significant for positive straight leg

26  ─────────────────────

27      [8]   The Court addresses the applicable period for Plaintiff's SSI
   claim *infra*.

28

1   raising tests on the right side in May of 1991. Exhibit 41,

2   Page 6. There w[ere] also muscle spasms in the back, more on

3   the right side than on the left. This was in November of 1991,

4   Page 301 as it's marked. . . . We have weakness on the left

5   side. This was as of May 1990, and that's marked page 180.

6   That same page shows that the deep tendon reflexes were normal.

7   Page 134, dated December 1988, showed diminished left Achilles

8   tendon and left-sided muscle atrophy. Think that was of the

9   calf. What we have is a Claimant who has back pain with

10   evidence of radiculopathy of the left lower extremity. The

11   radiculopathy is significant for muscle weakness, question of

12   muscle atrophy, and asymmetrical reflex changes. I did not find

13   evidence of sensory loss corresponding to a dermatome, and we

14   have a report of an EMG which was normal. . . . So I don't

15   think that he meets or equals the listing of impairment. *But*

16   *it has resulted in the marked limitation in his ability to*

17   *perform substantial, gainful activity in that he would be*

18   *restricted from lifting no more than ten pounds on occasion, and*

19   *less than ten pounds frequently. He could sit for six hours of*

20   *an eight-hour day. Stand or walk for four hours of an eight-hour*

21   *day, provided he's allowed to change position at will. He could*

22   *occasionally bend, stoop, kneel, and would have only occasional*

23   *ability to use the left lower extremity for foot controls.*

24

25  (A.R. 642-43; emphasis added.)

26

27   With respect to any additional limitations Plaintiff could have

28

experienced following June 30, 1991, and up to September 17, 1995 (which, if present, might have shown that Plaintiff was "disabled" and eligible for SSI benefits), the following colloquy between the ALJ and Dr. Nafoosi occurred:

> Q: Dr. Nafoosi, is your opinion that [Plaintiff's] condition has deteriorated over time?
>
> A: No, I don't -- I've never been able to find the sensory loss. The asymmetrical reflex changes have become symmetrical. [I] didn't find persistence of muscle atrophy. No, I think he's just stabilized.
>
> Q: He's the same now as he was then?
>
> A: Yes, with regard to his back. With regards to his heart, of course, he suffered a heart attack in December of 1994. And so his heart condition has worsened, but he remains within the restrictions despite that that I have provided.

(A.R. 643.)

The record thus shows, contrary to Plaintiff's assertion, that Dr. Nafoosi *did* provide a clear opinion that Plaintiff was able to maintain substantial gainful activity during the relevant time period, with certain work restrictions. In particular, while Dr. Nafoosi found that Plaintiff had "marked limitation in his ability to perform substantial, gainful

1  activity," Dr. Nafoosi nevertheless found that Plaintiff could perform
2  work within the exertional level of "sedentary" work with further non-
3  exertional limitations.  *See* 20 C.F.R. § 404.1567(a)("Jobs are sedentary
4  if walking and standing are required occasionally and other sedentary
5  criteria are met [*i.e.*, lifting no more than 10 pounds at a time and
6  occasionally lifting or carrying small articles].")  Plaintiff's belief
7  that having a "marked" limitation in one's work abilities translates to
8  a *de facto* finding of a complete inability to work is mistaken.
9
10          Furthermore, Dr. Nafoosi's opinion is consistent with the reports of
11 Plaintiff's treating physician during the relevant time period, which show
12 that Plaintiff was not disabled for any continuous 12-month period on or
13 before June 30, 1991, his last insured date.  (*See* A.R. 136-46 -- June 19,
14 1989 report from Dr. Jack Sexton, a treating physician, stating that
15 Plaintiff was "temporarily partially disabled for a period of six to eight
16 weeks" for state worker's compensation purposes and was precluded from
17 heavy lifting, repetitive bending, and stooping; 147-50, 153-55 -- July
18 31, 1989 and September 14, 1989 reports of Dr. Sexton that Plaintiff
19 remained temporarily partially disabled for six to eight weeks and was
20 precluded from lifting more than ten pounds, repetitive bending and
21 stooping, and prolonged standing and walking; 176-83 -- May 3, 1990 report
22 from Dr. Sexton stating that Plaintiff was limited to "light" work,[9] which
23 included "preclusions of heavy lifting, repetitive bending and stooping,
24 from repetitive or heavy pushing and pulling, from prolonged sitting or
25
26 _____
27          [9]     "Light work" involves "lifting no more than 20 pounds at a
   time with frequent lifting or carrying of objects weighing up to 10
   pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).
28

1  driving as well as from prolonged standing".)

2

3      In addition, Dr. Nafoosi's opinion that Plaintiff's residual

4  functional capacity did not change following his June 30, 1991 last

5  insured date is largely consistent with the reports of treating and

6  examining physicians following Plaintiff's last insured date and prior to

7  September 17, 1995.  (See A.R. 562-67 -- March 26, 1995 report of Dr. Dan

8  Phan, an examining physician, finding that Plaintiff could lift and carry

9  25 pounds occasionally and ten pounds frequently and "could stand, walk,

10 or sit at light duty for up to six hours with breaks every two hours

11 during an eight-hour workday," but should avoid bending, stooping,

12 pushing, and pulling; 437-44 -- April 12, 1995 Physical Residual

13 Functional Capacity Assessment form completed by a state agency physician

14 stating that Plaintiff is limited to performing "light" work, with further

15 limitations of lifting 20 pounds occasionally and ten pounds frequently,

16 standing, walking, and/or sitting about six hours in an eight-hour

17 workday, and occasionally stooping, crouching, and crawling; 308-12 -- May

18 29, 1993 report from Dr. Jalil Rashti, an orthopedic physician who

19 examined Plaintiff at the request of the Commissioner, finding that

20 Plaintiff was able to sit for six hours, walk between two and four hours,

21 and lift 20 pounds occasionally and ten pounds frequently.)

22

23     Plaintiff's contention that the consistent residual functional

24 capacity assessed by the ALJ was not based on substantial evidence,

25 because the medical evidence shows that Plaintiff had herniated discs in

26 October 1988 and related surgery in 1989, and had a possible subsequent

27 herniated disc as of November 5, 1991, is unavailing.  All of the above-

28

noted doctors, who treated and examined Plaintiff, were aware of his herniated disc diagnosis in October 1988 and subsequent laminectomy on 1989, yet nonetheless determined a functional capacity effectively the same as that found by the ALJ.

With respect to the "possible" subsequent herniated disc, in a June 20, 1991 letter to the insurance carrier, Dr. Abatecola sought to justify having an MRI performed, noting that, following the "type" of surgery Plaintiff had in 1989, there is a "high incidence of" a "bulging or herniated disc below or above the level of the surgical procedure." (A.R. 302.)  In a November 5, 1991 letter, Dr. Abatecola again sought to justify an MRI, noting a "[p]ossible new herniated nucleus pulposus above the level of a previous laminectomy." (A.R. 301.)  Dr. Abatecola, thus, never actually diagnosed Plaintiff with a further herniated disc, but merely opined that, based on his experience with other patients who had received this type of surgery, one was "possible."  Both Dr. Nafoosi, the medical expert, and Dr. Rashti, the examining physician, expressly noted and considered Dr. Abatecola's statement, yet determined a functional capacity consistent with that ultimately found by the ALJ. (*See* A.R. 301, 312.) In short, the medical evidence of Plaintiff's herniated discs and subsequent surgery, as well as Dr. Abatecola's speculative statement, *was* considered by the other physicians of record on whose opinions the ALJ relied and, thus, by the ALJ in determining Plaintiff's residual functional capacity.

Plaintiff's contention that the November 14, 2001 opinion of Dr. Abatecola shows otherwise, and that the ALJ failed to adequately reject

this opinion, is equally unavailing.  In a November 14, 1991 "To Whom it May Concern" letter, Dr. Abatecola stated that Plaintiff is "totally disabled" due to his lumbar disc disease and "is [precluded] from doing any lifting, standing, stooping and bending" and "unable to sit or stand for long periods of time."  (A.R. 222.)   Contrary to Plaintiff's assertion, the ALJ twice discussed and stated specific and legitimate reasons for rejecting Dr. Abatecola's November 14, 2001 letter.

At the May 16, 2002 hearing, while questioning Dr. Nafoosi, Plaintiff's representative brought up Dr. Abatecola's November 14, 2001 letter, describing it as an opinion of total disability.  (A.R. 646.)  In response to the ALJ's question, the representative conceded that Dr. Abatecola was treating Plaintiff in connection with a worker's compensation case.  (A.R. 647.)  The ALJ then remarked on the differences between state worker's compensation and social security terminology and her obligation to consider these differences, pursuant to Desrosiers, *supra*, and stated:

> And a conclusion that someone is totally disabled for Workers' Compensation terms does not necessarily carry over to Social Security terms.  And furthermore, it is a conclusion that is reserved to, at that time the Secretary, and now the Commissioner of Social Security.
>
> . . . .
>
> It is not conclusive on me.

(A.R. 647.)

In her June 20, 2002 decision, the ALJ stated:

> In a "to whom it may concern" letter dated November 14, 1991, Dr. Abatecola reported that [Plaintiff] continued to experience back pain.  According to Dr. Abatecola, [Plaintiff] was restricted from lifting, standing, stooping, and bending. The doctor felt that [Plaintiff] was "totally disabled." (Exhibit 34.)
>
> . . . .  [Discussion of the medical evidence, including, *inter alia*, the opinions of Drs. Rashti and Nafoosie and the state agency physician discussed above.]
>
> The Administrative Law Judge feels that the foregoing limitations [a residual functional capacity to sit for 6 hours and stand and walk for two hours in an eight-hour work day, to lift and carry up to ten pounds, and a sit stand option] are consistent with the objective medical evidence of record in combination with [Plaintiff's] subjective complaints, the opinions of Dr. Nafoosi, and most medical source statements in the record.  For this reason, the undersigned thus rejects all other medical source statements to the extent that they are inconsistent with these limitations.

(A.R. 600, 603.)

The ALJ's rejection of Dr. Abatecola's November 14, 1991 opinion that Plaintiff was "totally disabled" was proper, as this opinion is conclusory. *See* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief and unsupported by clinical findings). Moreover, the ALJ did not err in rejecting Dr. Abatecola's ultimate conclusion regarding Plaintiff's disability on the ground that this issue is one that is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(6)(e)(1) and 416.927(d)(6)(e)(1)("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also* Batson v. Commissioner, 359 F.3d 1190, 1194-95 (9th Cir. 2004); Nyman v. Heckler, 779 F.2d 528, 351 (9th Cir. 1985)("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ.")  In addition, the ALJ correctly observed that Dr. Abatecola's opinion of "disability" was rendered in a worker's compensation context, which does not equate, necessarily, with a disability conclusion under the Social Security Act. Desrosiers, 846 F.2d at 576.

Furthermore, Dr, Abatecola's November 14, 1991 opinion was inconsistent with the weight of the evidence regarding Plaintiff's

limitations, as discussed above.[10]   While the opinions of a treating physician should be given great weight, if not controlling weight, (*see* Social Security Ruling 96-2p), the opinions of other physicians -- examining physicians and non-examining medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported. *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan</u>, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); <u>Andrews</u>, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

A conflict existed between Dr. Abatecola's conclusory November 14, 1991 letter and the opinions of the treating, examining, and medical expert physicians described earlier with respect to Plaintiff's functional capacity.  The ALJ is responsible for resolving conflicts in the medical evidence.  <u>Batson</u>, 359 F.3d at 1195; <u>Thomas</u>, 278 F.3d at 956-57; <u>Andrews</u>, 53 F.3d at 1039-40.  The ALJ's resolution of that conflict in favor of

---

[10]     As ALJ Varni noted in his November 23, 1993 decision, Dr. Abatecola's opinion is internally inconsistent. (A.R. 424.)  The physician first opines that Plaintiff cannot do "any" standing, which appears implausible, then states that Plaintiff is unable to stand for long periods of time without pain, which presumably means that Plaintiff can stand for some period of time.  (A.R. 222.)

adopting the opinions of the latter doctors and rejecting Dr. Abatecola's inconsistent conclusions (A.R. 603) was entirely reasonable based on the record before her, given the conclusory and internally inconsistent nature of Dr. Abatecola's letter.

The ALJ's reliance on the opinions of Dr. Nafoosi and the other physicians described above in favor of a finding that Plaintiff retained the functional capacity to perform sedentary work was appropriate, as their opinions constituted substantial evidence. *See* Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 600.  The ALJ stated specific and legitimate reasons for rejecting Dr. Abatecola's opinion, as described above, which were supported by this substantial evidence. *See* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(ALJ may rejected contradicted opinion of treating physician by providing specific and legitimate reasons supported by substantial evidence).

Accordingly, the ALJ properly considered the medical evidence in determining Plaintiff's residual functional capacity, and no reversible error occurred.  Plaintiff's first and third issues, therefore, fail.

**B.**   **The ALJ Properly Incorporated Plaintiff's Subjective Complaints Into Her Residual Functional Capacity Finding.**

Plaintiff argues that the ALJ "failed to evaluate" and ignored Plaintiff's subjective pain complaints in assessing the effect of Plaintiff's multiple impairments on his ability to work. (Joint Stip. at 4.)  Plaintiff asserts that the ALJ "used the wrong test" in concluding

that Plaintiff's complaints of pain did not warrant a more restrictive finding as to Plaintiff's ability to work. (*Id.*)

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to his subjective symptoms merely because they are not corroborated by objective evidence. <u>Tonapetyan</u>, 242 F.3d at 1147-48; <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1985). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

<u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal

1    contradictions in the claimant's testimony.  Dodrill v. Shalala, 12 F.3d

2    915, 918 (9th Cir. 1993); Light, 119 F.3d at 792.  In determining whether

3    a claimant's testimony regarding the severity of his symptoms is credible,

4    the ALJ may consider:  "(1) ordinary techniques of credibility evaluation,

5    such as the claimant's reputation for lying, prior inconsistent statements

6    concerning the symptoms, and other testimony by the claimant that appears

7    less than candid; (2) unexplained or inadequately explained failure to

8    seek treatment or to follow a prescribed course of treatment; and (3) the

9    claimant's daily activities."  Smolen, 80 F.3d at 1284.

10

11       The Court will give great weight to the ALJ's credibility assessment.

12   Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v.

13   Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's

14   credibility determination is to be given great weight when supported

15   specifically).   However, when an ALJ's decision rests on a negative

16   credibility evaluation, "the ALJ must make findings on the record and must

17   support those findings by pointing to substantial evidence on the record."

18   Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Oreteza v.

19   Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be

20   "sufficiently specific to permit the reviewing court to conclude that the

21   ALJ did not arbitrarily discredit the claimant's testimony.")

22

23       Defendant does not dispute that Plaintiff was not required to adduce

24   objective evidence to demonstrate the extent of his claimed pain, nor does

25   Defendant dispute that there was objective evidence in this case that

26   supported Plaintiff's claimed pain.  The question then is whether the

27   ALJ's  residual  functional  capacity  finding  failed  to  account  for

28
                                        22

1   Plaintiff's subjective complaints.

2

3       When the ALJ questioned Plaintiff about how long he could sit in one

4   position in an eight-hour day from 1988 to 1991, Plaintiff responded that

5   "back then it wasn't so bad.  I could sit awhile," which he subsequently

6   testified was "maybe 30 minutes."[11]  (A.R. 634-35.)  Plaintiff testified

7   that he could walk "about a block," and was "told" that he "wasn't

8   supposed to lift but 25 pounds or less," although he never tried to lift

9   during that time period.  (A.R. 635-36.)  Plaintiff further testified that

10  he could not squat, bend, or reach over head during this time.  (A.R.

11  636.)  In addition, at the September 9, 1993 hearing, Plaintiff stated

12  that he could:  stand "about 10 or 15 minutes," walk "about a good half

13  block before I start having a lot of pain [in my back]," and sit "about

14  15, 20 minutes."  (A.R. 44-46.)  However, at that hearing, Plaintiff

15  refused to testify as to how much he could lift, because "I haven't tried

16  to lift nothing because I didn't want to re-injure myself."  (A.R. 45.)[12]

17

18      In his October 30, 1989 Pain Questionnaire, Plaintiff stated that he

19  does not experience side effects from his pain medication.  (A.R. 112.)

20

21  ───────────────

22      [11]   Plaintiff switched tenses in his testimony at this point, so
    it is ambiguous whether the "30 minutes" referred to his present ability
23  to sit or his past ability, when "it wasn't so bad."

24      [12]   Defendant points out that Plaintiff stated at the 2002 hearing
    that he refused a recommended second operation, because he was "tired of
25  knives."  (Joint Stip. at 6, citing A.R. 633.)  Plaintiff characterizes
    his testimony as "equivocal at best."  (Joint Stip. at 7.)  The Court
26  need not resolve any issue in this respect, for the reason why Plaintiff
    did not have a second operation is irrelevant to the issue of whether or
27  not the ALJ's residual functional capacity finding is consistent with
    Plaintiff's limitations during the claimed time period.

28
                                    23

1  At the hearing, Plaintiff testified that he feels "all right now with the
2  pain pills," and that the only side effect of such medication is
3  constipation. (A.R. 624-25.)

4

5      While Plaintiff argues that the ALJ ignored his pain statements,
6  Plaintiff fails to point to any statement of pain he made that is
7  inconsistent with the ALJ's findings.  The ALJ's residual functional
8  capacity finding that Plaintiff could perform work at the "sedentary"
9  level with a sit/stand option does not contravene Plaintiff's own
10 statements regarding his subjective limitations, both at the 1993 and 2002
11 hearings.  Furthermore, Plaintiff did not testify as to any side effects
12 from his medications that would impact his residual functional capacity.
13 In short, there was no rejection or discounting of Plaintiff's subjective
14 complaints, as the ALJ's residual functional capacity finding encompasses
15 them.   Indeed, the ALJ expressly stated that she found Plaintiff's
16 testimony to be "generally credible" and "sincere," but that, nonetheless,
17 such testimony did not indicate a residual functional capacity more
18 restricted than that she found to exist for the relevant period.  (A.R.
19 603, 605.)

20

21     The ALJ did not commit reversible error with respect to Plaintiff's
22 subjective complaints of pain.  Accordingly, Plaintiff's argument on this
23 issue is unavailing.
24 ///
25 ///
26 ///
27 ///
28

1  **C.    <u>The ALJ's Hypothetical Question To The Vocational Expert Was Proper</u>.**

2

3         "If a vocational expert's hypothetical does not reflect all the

4  claimant's limitations, then the 'expert's testimony has no evidentiary

5  value to support a finding that the claimant can perform jobs in the

6  national economy.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993)

7  (quoting <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)).  Thus,

8  in posing a hypothetical to a vocational expert, the ALJ must accurately

9  reflect all of the claimant's limitations.  <u>Embrey v. Bowen</u>, 849 F.2d 418,

10  422-24 (9th Cir. 1987).

11

12        Plaintiff's argument regarding this aspect of his third issue is

13  unclear.  He appears to contends that the hypothetical question to the

14  vocational expert was flawed, because it did not include any limitations

15  based on his ruptured discs found in October 1988 and for which Plaintiff

16  had surgery in October 1989, and based on his "possible" further

17  herniated disc, as noted by Dr. Abatecola in 1991. (Joint Stip. at 9-10.)

18

19        Here, in her hypothetical question, the ALJ asked the vocational

20  expert to "assume a younger individual less than 49 years of age, with a

21  ninth grade education, who is limited to sedentary work with a sit-stand

22  opinion." (A.R. 653.)  The vocational expert testified that Plaintiff

23  could perform the jobs of a bench assembler and nut sorter. (A.R. 654-

24  55.)  As discussed above, because the ALJ's residual functional capacity

25  finding was based on substantial evidence and fully encompassed

26  Plaintiff's limitations, the hypothetical question posed to the vocational

27  expert was proper.  *See* <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-64 (9th

28

Cir. 2001)(ALJ properly relied upon the vocational expert's response to a hypothetical that did not include limitations asserted by the claimant that were not supported by the record); *see also* <u>Thomas</u>, 278 F.3d at 959-60 (when a claimed limitation lacks any objective medical evidence to support it and has not been found to exist, it need not be included in the hypothetical question to the vocational expert).

The ALJ's hypothetical incorporated her finding as to Plaintiff's residual functional capacity which, for the reasons found above, was not erroneous.  Accordingly, the hypothetical question was not flawed and the ALJ did not err in relying on the vocational expert's response in finding that that Plaintiff could perform other jobs in the national economy during the claimed period of disability.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner.

///

///

///

///

///

///

///

1    IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies
2 of this Memorandum Opinion and Order and of the Judgment on Plaintiff and
3 counsel for Defendant.

4

5    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7 DATED: May 19, 2006.

8                                                    /s/
                                              _____
                                              MARGARET A. NAGLE
9                                    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28